**UNITED STATES DISTRICT COURT**

**DISTRICT OF NORTH DAKOTA**

_____

| | |
|---|---|
| Christopher John Logan, | Case No. _____ |
| | Case Type: Employment |
| Plaintiff, | |
| | **COMPLAINT AND** |
| v. | **JURY DEMAND** |
| University of North Dakota, | |
| Defendant. | |

_____

**INTRODUCTION**

1.  This case involves employment retaliation under Title IX of the Education Amendments of 1972 and the North Dakota Whistleblower Act, brought by Christopher Logan, the former Head Women's Soccer Coach at the University of North Dakota. Logan alleges he was wrongfully terminated after reporting gender-based discrimination in athletic facilities and programs and participating in a Title IX investigation into these inequities. Despite its obligation as a recipient of federal funding to uphold anti-discrimination laws, the University of North Dakota terminated Logan's employment shortly after his

1

protected activities, resulting in significant harm to his career, reputation, and emotional well-being.

## PARTIES

2.     Christopher John Logan, an adult resident of Grand Forks, North Dakota, was employed as the Head Women's Soccer Coach at the University of North Dakota from January 2016 to December 31, 2024. During this time, Logan was an "employee" of the University of North Dakota as defined by applicable state and federal law.

3.     Defendant University of North Dakota ("UND") is a public institution of higher education located at 264 Centennial Drive Stop 8196, Grand Forks, ND 58202-8196. UND receives federal funding and is subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. At all times relevant to this action, UND was Plaintiff's "employer" as defined by applicable state and federal law and operated an NCAA Division I athletics program including both men's and women's sports teams.

## JURISDICTION AND VENUE

4. Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

5. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law—specifically Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from and form part of the same case and controversy as Plaintiff's federal claims.

7. This Court has personal jurisdiction over Defendant because UND operates, resides, and conducts business within the State of North Dakota and this District.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the claims arose in this District, Plaintiff resides in this District, and Defendant is located and conducts business in this District. The unlawful employment practices alleged herein occurred within the District of North Dakota.

## FACTUAL ALLEGATIONS

9. Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

*Plaintiff's Employment History and Performance*

10. In January 2016, UND hired Plaintiff as Head Women's Soccer Coach. Prior to joining UND, Plaintiff had established a strong track record of success in collegiate soccer coaching.

11. Plaintiff served as the head coach of the University of Northern Iowa women's soccer team for one year, where he led the Panthers to their best season since 2003. Under his guidance, UNI set numerous program records, including best conference regular-season finish, most conference points, most all-conference player awards, most home wins, and most goals scored.

12. Before that, Plaintiff spent four seasons at North Dakota State University, including three as associate head coach, where he helped the Bison to a Summit League regular-season title in 2015 and four consecutive Summit League tournament appearances. Throughout his tenure at UND, Plaintiff demonstrated exceptional performance and achieved significant success with the program.

4

13. Under Plaintiff's leadership, the UND's women's soccer team achieved its best Division I record (9-6-2) in 2018, made its first Summit League Tournament appearance in 2019, and secured its first 10-win season since 2006.

14. Plaintiff's athletes excelled on and off the field, with multiple players receiving All-Summit League selections, including a Summit League Player of the Year award winner. The team consistently maintained a GPA above 3.0.

15. Prior to the events giving rise to this lawsuit, Plaintiff had never received any formal disciplinary action or warning regarding his job performance.

*Gender-Based Discrimination in UND Athletic Facilities*

16. Throughout his employment, Plaintiff observed and reported significant disparities between the facilities and resources provided to women's soccer compared to men's athletic programs at UND.

17. UND's women's soccer playing field failed to meet NCAA-recommended dimensions of 120 yards by 75 yards and presented numerous safety hazards, including significant declines at field edges, a deep embankment near the goal creating safety concerns, and a northwest side decline making corner kicks nearly impossible.

18. Unlike UND men's athletic facilities, the women's soccer field lacked proper security and enclosure, resulting in unauthorized access by students using the field for recreation and people walking dogs on the field.

19. UND provided only two small bleachers for spectators of women's soccer games, while men's sports programs enjoyed proper permanent stands. Similarly, women's soccer was forced to use a shared shed for a press box, while men's programs had permanent press boxes.

20. UND's indoor practice facilities were similarly inequitable. The women's soccer team was restricted to sharing a half-field with women's softball and cheer teams, while men's football was given priority for full-field use. The women's soccer program had limited access to practice facilities from 8am-8pm, while male athletes had 24-hour access.

*Protected Activities and Retaliation*

21. On March 2, 2024, Plaintiff emailed UND administration regarding facility access inequities and contract renewal disparities between men's and women's athletic programs.

22. In October 2024, the women's soccer team filed a formal Title IX complaint regarding the gender-based disparities in athletic facilities and resources.

23. On October 21, 2024, Plaintiff met with UND Human Resources to discuss concerns about retaliation he was experiencing after supporting the Title IX complaint.

24. Less than one week later, Plaintiff met with Senior Associate Athletic Director Liz Jarnigan for an end-of-season review.

25. On November 6, 2024, Plaintiff participated in a Title IX investigatory meeting regarding the discrimination complaints.

26. On November 25, 2024, less than three weeks after participating in the Title IX investigation, UND informed Plaintiff that his contract would not be renewed.

27. During this time, Liz Jarnigan told a current UND coach that the Title IX complaint influenced UND's decision not to renew Plaintiff's contract.

28. On December 31, 2024, Plaintiff's employment with UND was terminated through non-renewal of his contract.

29. The temporal proximity between Plaintiff's protected activities and his termination, combined with Jarnigan's explicit admission, demonstrates that UND's decision not to renew Plaintiff's contract was made in retaliation for his protected activities under Title IX and the North Dakota Whistleblower Act.

30. As a direct result of UND's retaliatory actions, Plaintiff has suffered significant damages, including loss of employment, salary, and benefits, damage to his professional reputation, emotional distress, and loss of future earning capacity.

## CAUSES OF ACTION

## COUNT I

### RETALIATION IN VIOLATION OF TITLE IX
### 20 U.S.C. § 1681 et seq.

31. Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

32. Title IX prohibits discrimination on the basis of sex in education programs or activities receiving federal financial assistance. 20 U.S.C. § 1681(a).

33. Title IX's private right of action encompasses claims of retaliation against individuals who report or oppose sex discrimination.

34. Defendant University of North Dakota receives federal financial assistance and is therefore subject to Title IX's requirements.

35. Plaintiff engaged in protected activity under Title IX when he reported gender-based discrimination in athletic facilities and resources, supported the women's soccer team's Title IX complaint, and participated in the Title IX investigation regarding these inequities.

36. Plaintiff reasonably believed that the disparities he reported constituted unlawful sex discrimination under Title IX, including but not limited to:

    a. Substandard playing field conditions for women's soccer;

    b. Inadequate security and access controls for women's facilities;

    c. Inferior spectator and media facilities compared to men's programs;

    d. Unequal access to practice facilities and equipment; and

    e. Discriminatory treatment in facility scheduling and maintenance.

37. Defendant took materially adverse action against Plaintiff by terminating his employment through non-renewal of his contract.

38. A causal connection exists between Plaintiff's protected activities and his termination, as evidenced by:

    a. The close temporal proximity between Plaintiff's participation in the Title IX investigation (November 6, 2024) and notification of his contract non-renewal (November 25, 2024);

    b. The explicit admission by Senior Associate Athletic Director Liz Jarnigan that "the Title IX complaint was a factor in the decision not to renew [Logan's] contract"; and

    c. The absence of any legitimate, non-discriminatory reason for Plaintiff's termination, given his successful performance record.

39. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered and continues to suffer substantial damages, including loss of employment, salary, and benefits; damage to professional reputation; emotional distress; loss of future earning capacity, and other damages to be proven at trial.

## COUNT II

**VIOLATION OF NORTH DAKOTA WHISTLEBLOWER ACT**
**N.D.C.C. § 34-01-20**

40. Plaintiff incorporates each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

41. The North Dakota Whistleblower Act prohibits an employer from discharging, disciplining, or discriminating against an employee because the employee reports a violation or suspected violation of federal, state, or local law.

42. Plaintiff engaged in protected activity under the Act when he:

    a. Reported violations of Title IX regarding gender-based discrimination in athletic facilities and resources;

    b. Supported student-athletes in filing a formal Title IX complaint; and

    c. Participated in the investigation of Title IX violations.

43. Defendant took adverse employment action against Plaintiff by terminating his employment through non-renewal of his contract.

44. A causal connection exists between Plaintiff's protected activities and his termination, as demonstrated by:

    a. The temporal proximity between his protected activities and termination;

    b. The explicit admission by Defendant's agent that the Title IX complaint influenced the decision not to renew his contract; and

    c. The pretextual nature of any purported legitimate reasons for his termination.

45. As a direct and proximate result of Defendant's retaliatory actions, Plaintiff has suffered substantial damages as outlined above.

46. Defendant's actions were willful, wanton, and in reckless disregard of Plaintiff's rights under North Dakota law, entitling Plaintiff to all available remedies under N.D.C.C. § 34-01-20.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment in favor of Plaintiff and against Defendant as follows:

1. Declaring that Defendant's conduct violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and the North Dakota Whistleblower Act, N.D.C.C. § 34-01-20;

2. Awarding Plaintiff compensatory damages for economic losses, including but not limited to:

    a. Lost wages and benefits;
    b. Loss of future earning capacity;
    c. Other economic damages in an amount to be proven at trial;

3. Awarding Plaintiff compensatory damages for non-economic losses, including but not limited to:

    a. Emotional distress and mental anguish;
    b. Damage to professional reputation;
    c. Other non-economic damages in an amount to be proven at trial;

  4. Granting Plaintiff injunctive and declaratory relief against Defendant, including:

   d. Requiring Defendant to implement effective policies and procedures to prevent retaliation;
   e. Requiring Defendant to provide training on Title IX compliance and anti-retaliation;
   f. Requiring Defendant to address gender-based disparities in athletic facilities and resources;

  5. Ordering Defendant to pay Plaintiff's reasonable attorneys' fees and costs;

  6. Awarding Plaintiff pre-judgment and post-judgment interest as allowed by law;

  7. Granting such other and further relief as this Court deems just and proper.

//

//

//

//

//

## JURY DEMAND

*Plaintiff demands a jury trial on all claims so triable.*

                                                Respectfully submitted,

Dated: April 15, 2025                    **HALUNEN LAW**

                                                <u>/s/ *Kyle P. Hahn*</u>
                                                Kyle P. Hahn #0399588
                                                1650 IDS Center
                                                80 South Eighth Street
                                                Minneapolis, MN 55402
                                                Telephone: (612) 605-4098
                                                Facsimile: (612) 605-4099
                                                hahn@halunenlaw.com

                                                ***ATTORNEYS FOR PLAINTIFF***